CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RHa

MAR 19 2013

JULIA C. DUDLEY, CLERK
BY: HMcDaneed
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GLENN CALVIN LAWHORN,<br>Petitioner, | )<br>)<br>) | Civil Action No. 7:12-cv-00203 |
| | ) | |
| v. | )<br>) | **MEMORANDUM OPINION** |
| E.E. WRIGHT, JR.,<br>Respondent. | )<br>)<br>) | By: **Hon. Jackson L. Kiser**<br>**Senior United States District Judge** |

Glenn Calvin Lawhorn, a Virginia inmate proceeding pro se, filed an amended petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to challenge a felony conviction for statutory burglary entered by the Circuit Court of Amherst County. Respondent filed a motion to dismiss, and petitioner responded, making the matter ripe for disposition.[1] After reviewing the record, I dismiss the petition because petitioner is not entitled to habeas relief.

## I.
### A.

A jury found petitioner guilty of felony statutory burglary, in violation of Virginia Code § 18.2-91, and misdemeanor destruction of property, in violation of Virginia Code § 18.2-137. The evidence revealed that petitioner rented a trailer from its owner, Ronnie Wright, in May 2006. Wright filed an unlawful detainer action against petitioner in the General District Court of Amherst County on June 1, 2006, for unpaid rent, and Wright obtained legal possession of the trailer on June 16, 2006, via default judgment. Petitioner was later charged with going back into the trailer to burglarize and vandalize it.

---

[1] Petitioner also filed a motion to amend his response to simply provide copies of state court records. The court already possesses state court records from the Circuit Court of Amherst County, the Court of Appeals of Virginia, and the Supreme Court of Virginia, so the motion to amend is denied as moot. Petitioner also filed a motion for production of documents, which I construe as a request for discovery pursuant to Rule 6 of the Rules Governing § 2254 Cases. I find no good cause to authorize discovery and deny the request. I also deny petitioner's motions for reconsideration of prior orders about the production of state court records for the reasons already explained to petitioner in prior orders and because petitioner is not entitled to those records.

The Court of Appeals of Virginia summarized the facts related to the charges against petitioner as follows:

> On June 24, 2006, Ricky Burks, Jr., signed a one-year lease with Ronnie Wright to rent a residential trailer for him and his wife. Burks described it as having a living room, two bedrooms, a bathroom, and a kitchen. That same day, Burks had the locks on the trailer changed, and he and his family members thoroughly cleaned the trailer. The trailer had electricity at the time, and the refrigerator inside worked. Burks and his wife left that night and stayed at his mother-in-law's house, intending to return the next day and move in their possessions. Burks locked all the doors before leaving. When they returned the next day, June 25, 2006, Burks found the trailer door broken and the trailer burglarized and vandalized.
>
> * * *
>
> Burks testified that when he returned the next day to the trailer he and his family had cleaned the previous day, the screen door was broken, the door was kicked in, there was blood everywhere, and a wood stove located next to the well and well house had been thrown onto the well house.
>
> Wright identified photographs depicting damages to the trailer, the well, and the well house. He testified that "[i]t looked like someone just went through raging mad and just destroyed what he could as he walked through it . . . destroying and tearing up whatever they could, and out the door." Wright said there was trash and debris everywhere, there was blood in various places in the trailer, and he described the damage to the doors, the walls, the well and well house, the refrigerator, and the carpet. Wright prepared a list detailing the costs for repairing the damages and returning the trailer, well house, and well to their previous condition. Replacement parts totaled approximately $450, and the entire cost totaled $1,024.[2] Wright said the clean-up and repairs took a couple of days. After Wright first saw the damaged property, he returned to his shop and heard two messages from [petitioner] threatening to kill Wright. One June 27, 2006, Wright provided the police with taped copies of the phone calls.

Lawhorn vs. Commonwealth, No. 2530-08-3, slip op. at 1-4 (Va. Ct. App. June 3, 2009) (original footnote). DNA testing showed that the blood found in the trailer matched petitioner's blood.

---

[2] Wright testified that Burks collected and hauled away three loads of trash that resulted from the burglary, at an estimated cost of $225. Because Burks did that on his own, Wright conceded that the total amount of damage was less than $1,000.

**B.**

On October 9, 2007, a grand jury in Amherst County charged that:

> [O]n or about the 24th day of June, 2006, in the said County of Amherst, and within the jurisdiction of the Circuit Court of Amherst County [petitioner] did unlawfully and feloniously break and enter or enter and conceal himself in the daytime, or enter without breaking in the nighttime, the dwelling of Ricky Burks, Jr., with the intent to commit larceny, assault and battery or any felony other than murder, rape, robbery, or arson in violation of §§ 18.2-90; 18.2-91 of the Code of Virginia (1950) as amended.

By letter dated April 18, 2008, the prosecutor told counsel that the Commonwealth would ask the Circuit Court to amend the misdemeanor warrant[3] and felony indictment from "on or about the 24th day of June, 2006" to "on or about the 24th to the 25th of June, 2006." Immediately prior to trial on April 28, 2008, the prosecutor requested that the Circuit Court authorize the amendments. Petitioner's counsel did not object, and the Circuit Court approved the amendments.

After hearing the Commonwealth's and petitioner's evidence, the jury found petitioner guilty of both misdemeanor destruction of property and felony statutory burglary. The Circuit Court sentenced petitioner to, inter alia, fifteen years' incarceration, with seven and a half years suspended, for the felony conviction and twelve months' incarceration for the misdemeanor conviction. Petitioner appealed, arguing that the trailer could not be a "dwelling" and that the Circuit Court erred by denying a motion to strike the evidence because the misdemeanor conviction invalidated a finding of felonious intent to destroy property valued over $1,000. The Court of Appeals of Virginia denied the appeal, and the Supreme Court of Virginia refused petitioner's subsequent appeal.

---

[3] The General District Court previously entered a judgment for the misdemeanor charge, and petitioner appealed to the Circuit Court, where trial on the misdemeanor charge was joined with the trial on the felony charge.

3

In November 2010, petitioner filed a voluminous, self-styled petition for a writ of habeas corpus with the Supreme Court of Virginia, which granted petitioner thirty days to file a corrected petition that conformed to Virginia Code § 8.01-655 and did not exceed fifty pages. Petitioner subsequently filed an amended petition that presented 101 numbered claims. The respondent filed a motion to dismiss, and petitioner filed a motion for leave to file a reply. The Supreme Court of Virginia denied the motion for leave to file a reply and, after considering the amended petition and respondent's motion to dismiss, dismissed all but one claim. The Supreme Court of Virginia granted petitioner's claim that the misdemeanor charge should have been dismissed before trial because the statute of limitations had expired, but it dismissed all other claims on the merits or as defaulted. Lawhorn v. Warden of the Red Onion State Prison, No. 101860, slip op. at 1-2 (Va. July 1, 2011). Pursuant to the Supreme Court of Virginia's order, the Circuit Court vacated the misdemeanor property destruction conviction by an order dated July 12, 2011, without holding a hearing.[4]

Petitioner filed a second habeas action with the Supreme Court of Virginia in February 2012. The Supreme Court of Virginia dismissed the action sua sponte as untimely, pursuant to Virginia Code § 8.01-654(A)(2), and denied a petition for rehearing.

## C.

Petitioner timely filed the instant petition, arguing the following 127 claims.

1.  Procedural bars that came into being were the result of ineffective assistance of trial, post-conviction, and appellate counsel. Additionally, counsel were ineffective for allowing any stipulations or partial stipulations about any issue that affected petitioner's rights.

---

[4] Petitioner acknowledges in his filings that no hearing was held to vacate the conviction, which occurred when the Circuit Court entered the one-page order.

2. Petitioner was denied due process because the Commonwealth did not file the list of damages seven days before trial.
3. Petitioner was denied due process because the Commonwealth used evidence created by the General District Court in an unlawful detainer proceeding on June 16, 2006, that was void ab initio for failure to serve process.
4. The Sheriff's Office did not execute the writ of possession in accordance with law, and there was a fraudulent notation that it had been executed on June 23, 2006.
5. Counsel was ineffective for not arguing claims 3 and 4 via a motion to dismiss.
6. The Commonwealth offered stipulations, which violated petitioner's rights when the Circuit Court allowed them.
7. Counsel did not file a motion to strike the evidence of the alleged eviction as void because the unlawful detainer judgment was void ab inito.
8. Petitioner was convicted of one crime by proof of another that was not charged and was not a lesser-included charge.
9. Petitioner was convicted and sentenced via an indictment that deprived him of notice of the nature of the accusation and was fatally defective because of a variance between the allegation and the proof.
10. Petitioner was convicted and sentenced via an unlawful judgment because the indictment alleged a violation of Virginia Code § 18.2-91 without specifying the requisite felonious intent.
11. Petitioner was unlawfully convicted and sentenced where an offense charged under the misdemeanor provision of Virginia Code § 18.2-137 supplied the intent to commit a felony under Virginia Code § 18.2-91.
12. Petitioner was unlawfully convicted and sentenced because the Commonwealth charged him with misdemeanor damage of property belonging to Wright and charged him with breaking and entering the dwelling of Burks, Jr. with the intent to commit misdemeanor property damage.
13. The breaking and entering verdict was illegal because the jury found him guilty of statutory burglary as charged in the indictment, which means his conviction for breaking and entering was illegal.
14. Petitioner was unlawfully convicted and sentenced because the jury returned an illegal verdict.
15. Counsel were ineffective for not challenging the illegal verdict with a motion for judgment notwithstanding the verdict.
16. Counsel were ineffective for not challenging the illegal verdict with a motion to vacate the unlawful judgment.
17. The Commonwealth prosecuted petitioner under Virginia Code § 18.2-91 based on an intent to commit a misdemeanor offense, which violated legislative intent that § 18.2-91 require felonious intent.
18. (a) The Commonwealth misapplied the doctrine of transferred intent, which the Circuit Court accepted, and (b) counsel did not object to this misapplication to preserve the issue for appeal.

19. Petitioner was unlawfully convicted and sentenced because the jury relied on the unlawful writ of possession that was issued without jurisdiction.

20. Petitioner was unlawfully convicted and sentenced because, when Virginia Code § 18.2-89 and § 18.2-91 are read in conjunction with § 18.2-90, it is clear that the necessary intent must be to commit a felony, not a misdemeanor.

21. Petitioner was convicted and sentenced in violation of double jeopardy and collateral estoppel. Petitioner appealed the misdemeanor property damage conviction from the General District Court to the Circuit Court, and the Commonwealth established in the Circuit Court that the offenses occurred on a different date.

22. (a) Petitioner was denied due process by the Commonwealth's use of inadmissible hearsay, which the Circuit Court accepted, and (b) counsel did not strenuously object to the inadmissible evidence or preserve the issue for appeal. The hearsay included

    i. Burks' and Wright's testimonies about the contents of the lease, although the lease was not submitted to the court, and counsel did not obtain a copy of the lease via discovery;

    ii. Wright's testimony about receiving petitioner's threatening telephone messages; and

    iii. Wright's testimony about the value of the damaged property because an owner cannot give second-hand testimony of the costs for repair or replacement.

23. The Commonwealth suppressed exculpatory statements by Wright; Mr. and Mrs. Burks, Sr.; Burks, Jr.; and Burks, Jr.'s girlfriend that the Burkses did not arrive at the trailer on June 24, 2006, until after 3:00 p.m.

24. The Commonwealth suppressed copies of petitioner's threatening phone messages.

25. The Commonwealth suppressed E-911 calls, CFS reports, and other exculpatory telephone records, including times of events and statements that could be used for impeachment.

26. The Commonwealth suppressed exculpatory statements from Cynthia Burnett, petitioner's alleged fiancé, that she made to the Office of the Commonwealth's Attorney in 2006.

27. The Commonwealth suppressed petitioner's exculpatory statements made to Lieutenant Doss a year before the charges were filed.

28. The Commonwealth removed exculpatory reports and statements from the presentence report before the sentencing hearing.

29. The Commonwealth implied that petitioner had a criminal record when the prosecutor mentioned during opening statements that the blood taken from the trailer was a "hit" for petitioner's blood in a DNA databank.

30. The Commonwealth violated double jeopardy by obtaining a duplicitous or multiplicitous indictment.

31. The Commonwealth amended the indictment and warrant to include June 25, 2006, after establishing at the preliminary hearing that the offenses occurred during the night of June 24, 2006, and after verifying that petitioner had an alibi for that night.

32. The Commonwealth amended the date of the charging documents after the preliminary hearing, in violation of collateral estoppel and double jeopardy.
33. The Commonwealth misrepresented facts to garner the jury's sympathy by referring to the woman with Burks, Jr. at the trailer as his wife when she was his girlfriend.
34. The Commonwealth suppressed a copy of the search warrant to obtain petitioner's buccal swab.
35. The Commonwealth filed the charges against petitioner more than a year after the offenses occurred, which prejudiced him on the ground of laches.
36. Petitioner was denied due process because he was convicted and sentenced in violation of judicial estoppel and double jeopardy.
37. Petitioner was denied due process when the Circuit Court did not give the jury an alibi instruction.
38. Petitioner was denied due process when he was denied access to the courts because correctional officials refused to transport him to the General District Court on March 6, 2009, for a hearing about the default judgment issued in the unlawful detainer civil action.
39. Petitioner was denied due process when he was convicted on insufficient evidence that damages to the well house occurred at the same time as the damages to the trailer or that the same person caused the damages.
40. The transcript of the trial is inaccurate because agents for the Commonwealth caused testimony favorable to petitioner to be omitted or removed, which constitutes fraud upon the court.
41. The Supreme Court of Virginia's denial of petitioner's appellate motion for independent transcription violated due process.
42. The following information was omitted from the transcript:
    a. Mrs. Lawhorn's testimony that petitioner got buckets of water from her house on the morning of June 24, 2006, to clean the trailer and that he was seen again before 5:30 p.m. with a bloody cut on his arm;
    b. Deputy Drewry's testimony that the trailer was not trashed or dirty and that there was no damage except for blood and broken glass; and
    c. Some of counsel's exceptions and arguments.
43. Petitioner was prejudiced at trial and on appeal by the missing testimony of Deputy Drewry, whose testimony should be given more weight than Burks, Jr. and Wright, whose testimonies were inconsistent with the photographs of the damages.
44. (a) A female black juror was excused because she said her husband knew Wright, but white jurors who knew Wright and the Burkses were not excused, and (b) counsel did not object to these facts and did not preserve the issues for appeal.
45. (a) Petitioner was denied due process by the Commonwealth's unlawful application of transferred intent, and (b) counsel's failure to object to that application constituted ineffective assistance.
46. Counsel was ineffective for not subpoenaing Mr. and Mrs. Burks, Sr. and Burks, Jr.'s girlfriend, whose statements would impeach Burks, Jr.'s testimony that he arrived at the

trailer at 8:00 a.m. on June 24, 2006, and that petitioner had not been at the trailer before Burks, Jr. arrived and changed the locks.

47. Counsel did not subpoena emergency room staff and records about petitioner's hospital visit during the morning of June 25, 2006, for the cut on his arm.

48. Counsel did not object to the Commonwealth's amendments about when the offenses occurred.

49. Counsel did not present evidence that it was physically improbable that petitioner could throw a heavy wood stove into a well house.

50. Counsel did not subpoena the preliminary hearing record where Burks, Jr. testified about when he moved into the trailer, the evidence of the alleged damages, and the times of the offenses.

51. Counsel did not subpoena Deputy Wood, who could testify that rotten food in the yard behind the trailer implied that the refrigerator was already broken; there was a broken refrigerator in the yard before June 24, 2006; there were animals in the yard on June 23, 2006; and Wright was not present during the execution of the writ of possession on June 23, 2006. Counsel's failure to subpoena Deputy Wood denied petitioner the right of compulsory process and the right to cross examine and impeach Burks, Jr.'s testimony that only trash was inside the trailer.

52. Counsel did not subpoena Deputy Wise, who could testify that she told Cynthia Burnett that Wright would meet petitioner and Burnett at the trailer on June 25, 2006, to return petitioner and Burnett's property. Deputy Wise's proffered testimony could have impeached Wright's testimony that Wright did not have knowledge of petitioner and Burnett's property and Burks, Jr.'s testimony that nothing of value was in the trailer. Deputy Wise could have implied that petitioner had no reason to cause Wright harm until petitioner recovered his property, and records existed that showed Burnett had contacted the Sheriff's Office about the missing property.

53. Counsel did not present evidence that Burks, Jr. and Wright broke into the trailer and took petitioner's belongings worth $12,000.

54. Counsel did not object to the prosecutor's opening statement that suggested petitioner was an ex-convict because his DNA was in Virginia's DNA databank.

55. Counsel did not subpoena Matt Ingram, a staff attorney at Lynchburg Legal Aid, to testify about conversations he had with Wright, Wood, and Burnett and a letter he sent to Burnett. Ingram could have testified:

    a. On the morning of June 26, 2006, Ingram spoke to Wright, who said he did not take any action about petitioner's belongings until after 3:00 p.m. on June 24, 2006, when he had employees take the contents of the trailer to the dump. Wright did not mention a burglary.

    b. Ingram spoke to Deputy Wood, who said he went to the property on June 23, 2006, and noted many things had been removed except trash and pets. Deputy Wood said that Wright called him during the evening of June 23, 2006, to ask where he was, and Deputy Wood answered that he had been present and alone at the appointed time.

     c. Wright told Ingram that someone trashed the property during the evening of June 24, 2006.

     d. Wright told Ingram that petitioner or Burnett left threatening messages on Wright's answering machine.

     e. Ingram's letter referred to Wright possessing petitioner's property.

56. Counsel did not ensure that the Circuit Court issued an alibi jury instruction.

57. Counsel did not subpoena the Commonwealth's Attorney or an assistant of the Commonwealth's Attorney for records about Burnett's attempt to file charges against Wright and Burks, Jr. The Commonwealth's Attorney arbitrarily declined to press charges against Wright or Burks, Jr.; the Commonwealth's Attorney was fully aware that the unlawful detainer was no good and the writ of possession was not lawfully executed; and the Sheriff colluded with the Commonwealth's Attorney.

58. Counsel did not subpoena Mr. and Mrs. Burks, Sr. to testify about their initial report that Burks, Jr. had committed the offenses, despite petitioner's explicit request.

59. Counsel did not subpoena Ray and Dale Branham, who lived in the trailer immediately before petitioner and who could have testified about the overall poor condition of the property and appliances before petitioner moved in. Counsel did not try to talk to the Branhams although counsel knew that Ray Branham was incarcerated.

60. Counsel did not file a motion for a mistrial or motion to set aside the verdict based on information in the presentence report that recited Burks, Jr.'s false testimony that he arrived at the trailer on June 24, 2006, at 8:00 a.m. although statements show he arrived at 3:00 p.m. The Commonwealth withheld exculpatory evidence that contradicted Wright's and Burks' testimonies about the times, and evidence showed that petitioner called E-911 before Wright or the Burkses did.

61. Counsel did not file a motion for a directed verdict on the ground that the evidence was insufficient to show the damages to the well house were committed at the same time as the damage to the trailer or even that the damages were caused by the same person.

62. Counsel did not file a motion to quash the indictment or otherwise challenge the indictment's defects even after the Circuit Court asked whether there was a problem with the indictment and expressed a concern about double jeopardy. The indictment is defective as uncertain and for charging three distinct offenses.

63. Counsel did not file a motion for a bill of particulars although the indictment did not describe any felonious intent.

64. Counsel did not file a motion to dismiss the indictment as fatally defective since no specific intent was charged in the indictment for statutory burglary.

65. Counsel did not file a motion to dismiss the indictment as void ab initio and fatally defective. The indictment charged the intent to commit a felony, but the only intent implied was to commit a misdemeanor.

66. Counsel did not object to the convictions as violating double jeopardy.

67. Counsel did not object to the convictions as violating double jeopardy or Virginia Code § 19.2-294 and, thus, did not file a motion to dismiss the indictment.

68. Counsel did not object to the convictions as violating double jeopardy or Virginia Code § 19.2-285 and, thus, did not file a motion to dismiss the indictment.

69. Counsel did not motion to merge the charges.
70. Counsel could have filed a motion to merge the offenses and to dismiss the indictment for:
    a. Insufficient evidence to prove the trailer was a dwelling house of another;
    b. Insufficient evidence to prove a felony provision of Virginia Code § 18.2-137;
    c. Insufficient evidence to prove intent; and
    d. All other grounds contained in the habeas petition.
71. Counsel did not file a motion to dismiss the indictment or vacate the felony conviction despite a variance between the charges and the proof.
72. Counsel did not file a motion for judgment notwithstanding the verdict although the misdemeanor conviction does not require a threshold amount of damage. Burks, Jr. did not suffer any measureable damage, a fact which must be proven to establish petitioner committed statutory burglary.
73. Counsel did not file a motion for a directed verdict based on claim 72.
74. Counsel did not motion the Circuit Court to vacate the judgment that was obtained on a fatally-defective, void indictment because the misdemeanor charge formed the intent necessary for statutory burglary.
75. Counsel did not file a motion to dismiss the indictment as violating legislative intent where the intent for statutory burglary must be the intent to commit a felony.
76. Counsel did not file a motion to dismiss the indictment or vacate the judgment where the conviction was obtained by proving an offense for which petitioner was not charged. Burks suffered loss of the use of the property as described in Virginia Code § 18.2-121, "Entering property of another for purpose of damaging it, etc."
77. Counsel did not file a motion for judgment notwithstanding the verdict for the reasons described in claim 76.
78. Counsel did not file a motion for a directed verdict for the reasons described in claim 76.
79. Counsel did not object when the Commonwealth submitted evidence proving a violation of Virginia Code § 18.2-121 as the alleged harm suffered by Burks, Jr, which was constitutionally impermissible because petitioner was not charged with violating Virginia Code § 18.2-121.
80. Counsel did not preserve claim 79 for appeal and did not raise claim 79 on appeal.
81. Counsel did not file a motion to quash or dismiss the indictment as fatally defective for failing to charge an offense because there was no allegation of intent to commit a felony.
82. Counsel did not request discovery or a bill or particulars, which would have provided detailed information about specific damages, alleged values, the precise crimes petitioner allegedly committed, and the times of the offenses. Petitioner did not have sufficient notice to fashion a defense.
83. Counsel did not object on the ground of judicial estoppel to the indictment's and warrant's amendments that changed the date of the offenses to between June 24 and June 25, 2006. The Commonwealth's proof that the offense occurred in the daylight

hours violated judicial estoppel and showed that petitioner was not guilty of the misdemeanor destruction of property charge.

84. Counsel did not file a motion to dismiss the charges based on res judicata and collateral estoppel for the reasons described in claim 83.

85. Counsel did not rebut evidence about the damages Wright allegedly sustained, thereby allowing a judgment for restitution to be entered for Wright's fraudulent claims.

86. Counsel did not present evidence about the damaged properties' depreciate values, and the felonious intent was easier to prove as the value of damages approached the $1,000 threshold.

87. Counsel did not object to the Commonwealth providing damage estimates at trial instead of seven days before trial.

88. Counsel did not investigate, present evidence, and argue that a search warrant for petitioner's buccal swabs was obtained on information that the offenses occurred on June 25, 2006, but petitioner was originally charged with committing the offenses on June 24, 2006. Furthermore, the search warrant was not submitted as evidence or as part of the record, and there was no evidence with which to compare petitioner's DNA.

89. Counsel should have moved to suppress the DNA evidence because there was no proof of how it was obtained for a comparison without consent or the search warrant.

90. Counsel did not bring to the attention of the court that Wright testified how he went to his shop and heard two threatening messages from petitioner after seeing the damages, thereby implying he saw the damages but did not report the damages to police before Burks, Jr.

91. Counsel did not file a motion to strike Wright's testimony about the value of the alleged damaged items as hearsay because Wright reported values he saw somewhere else, the values were not authenticated, and the values did not distinguish between costs to repair or to replace.

92. Counsel did not fully question Captain Doss about petitioner's statements, which could have been used in petitioner's defense and the Commonwealth should have disclosed. Counsel could have impeached Captain Doss when he testified that petitioner was very uncooperative and could have asked why Captain Doss refused to investigate or file a complaint against Wright.

93. Counsel did not object when Captain Doss misrepresented facts. Petitioner told Captain Doss that petitioner cleaned the trailer from about 10:00 a.m. to 2:00 p.m.; used his key the only time he went into the trailer; and was not at the trailer at any time after 3:30 p.m.

94. Counsel did not submit evidence that the woman Burks, Jr. married and had a child with was not the girlfriend with him at the trailer. This misstatement in the Commonwealth's evidence showed the prosecution's attempt to garner the jury's sympathy.

95. Counsel did not argue that Burks, Jr. put the white bucket in the trailer after the blood splatter happened because the bucket was clean but surrounded by blood.

96. Counsel did not argue laches where applicable.

11

97. Counsel did not object at the sentencing hearing when the probation officer who prepared the presentence report was not present for cross examination to describe the investigation's results, prosecutorial misconduct, or suppression of exculpatory evidence.
98. Appellate counsel did not argue all issues that were preserved during trial.
99. Appellate counsel and post-conviction counsel filed a frivolous motion for judgment notwithstanding the verdict without speaking to petitioner about the motion or giving him a copy of it.
100. Counsel rendered ineffective assistance because his law firm was a trustee in real estate sales involving Wright and actually sold Wright the property on which the damages occurred, which constitutes a conflict of interest and could have caused counsel to be reluctant to impeach Wright. Counsel, who was also a General District Court judge, was a neighbor of the prosecuting Assistant Commonwealth's Attorney, which is a conflict of interest because prosecutorial misconduct is an issue.
101. Petitioner was denied due process when employees of the Virginia Department of Corrections ("VDOC") fabricated an institutional charge against petitioner as retaliation.
102. (a) Petitioner was denied due process when the Circuit Court did not strike jurors who knew and did business with Wright and the Burkses, and (b) counsel rendered ineffective assistance by not using preemptory strikes to exclude these jurors and by not preserving the issues for appeal.
103. Petitioner was denied due process and the effective assistance of counsel because the jury was not properly instructed and counsel did not subpoena hospital records and hospital staff who treated petitioner on June 25, 2006. Petitioner had an alibi between 6:30 or 8:30 p.m. on June 24 and the morning of June 25.
104. The Court of Appeals of Virginia and the Supreme Court of Virginia violated stare decisis and denied petitioner due process because prior case law defined a "dwelling" differently than in petitioner's case.
105. Petitioner was denied due process guaranteed by federal and state constitutions.
106. Petitioner was denied the effective assistance of counsel guaranteed by federal and state constitutions.
107. Petitioner was denied trial by an unbiased jury as guaranteed by federal and state constitutions and laws.
108. The indictment was fatally defective for not giving sufficient notice of the nature and cause of the accusations, in violation of federal and state constitutions and laws.
109. The indictment was fatally defective for variances between the allegations and the proof, in violation of federal and state constitutions and laws.
110. The indictment was fatally defective because there was insufficient evidence to support any allegation of felonious intent, in violation of federal and state constitutions and laws.
111. Petitioner was not appointed counsel to represent him when the Circuit Court vacated the misdemeanor conviction.

112. Petitioner was not appointed counsel to appeal issues arising from the Circuit Court's order vacating the misdemeanor conviction.
113. Counsel did not file a motion to dismiss the misdemeanor charge, thereby allowing the charge to contaminate the trial and bias the jury.
114. The unlawful misdemeanor charge, which was used to secure the statutory burglary conviction, biased the jury.
115. The indictment did not contain notice of the prerequisite element of specific intent for the statutory burglary charge.
116. The indictment does not give notice of any specific intent, in violation of federal and state constitutions and laws.
117. Petitioner was not appointed counsel to represent him when the Circuit Court vacated the misdemeanor conviction.
118. Petitioner was not appointed counsel to appeal the Circuit Court's order vacating the misdemeanor conviction.
119. There has been no judicial review or determination of whether the Circuit Court's order vacating the misdemeanor conviction impacted the trial.
120. The lack of judicial review described in claim 119 denied petitioner due process.
121. The Supreme Court of Virginia did not order the Circuit Court to conduct a hearing to determine the validity of restitution although it ordered that the misdemeanor conviction be vacated.
122. The Circuit Court's failure to hold a hearing about restitution denied petitioner due process and representation of counsel because petitioner was ordered to pay $900 in restitution to Wright, who was designated the victim of the vacated misdemeanor property damage conviction.
123. Petitioner was denied due process by the Supreme Court of Virginia's denial of petitioner's motion with his first state habeas petition to declare the unlawful detainer judgment void _ab initio_.
124. Petitioner was denied due process, trial by an unbiased jury, and representation of counsel. Counsel was not permitted to challenge the amount of damages calculated during trial. The Supreme Court of Virginia ruled in <u>Lawhorn v. Warden of the Red Onion State Prison</u>, No. 101860 (Va. July 1, 2011), that the damages were sufficient to prove petitioner's intent to commit felony destruction of property and that no monetary value was necessary to prove the misdemeanor destruction of property charge. However, the jury was instructed to consider a threshold amount of monetary value and improperly inferred from the evidence that petitioner intentionally damaged the property.
125. The Circuit Court's failure to appoint counsel and allow petitioner to be present when the Circuit Court vacated the misdemeanor conviction denied petitioner due process, trial by an unbiased jury, and representation of counsel because the jury deliberated guilt on both charges.
126. There was a fatal variance between the allegations and the proof because the misdemeanor charge was untimely prosecuted, and petitioner was not permitted to attend a hearing when the Circuit Court vacated the misdemeanor conviction.

127. There was a fatal variance between the allegations and the proof because the indictment did not allege the intent to commit any property damage, and petitioner was not permitted to attend a hearing when the Circuit Court vacated the misdemeanor conviction.

## II.

Claims 38, 72, 73, 85, 101, and 123 must be dismissed because the claims do not relate to petitioner's continued custody pursuant to an existing state court judgment. A federal court may grant habeas relief from a state court judgment "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Petitioner argues in claim 38 that jail officials did not transport plaintiff to a judicial hearing for the unlawful detainer action, argues in claim 85 that counsel failed to challenge restitution calculations, argues in claim 101 that VDOC staff fabricated an institutional disciplinary charge, and argues in claim 123 that the Supreme Court of Virginia violated due process by not setting aside the default judgment in the unlawful detainer action. Claims 72 and 73 are moot because they discuss defects related to the now-vacated misdemeanor conviction. Petitioner also generally alleges various violation of Virginia law, but "[m]atters of state law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief." Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978). Accordingly, arguments about violations of Virginia law and claims 38, 72, 73, 85, 101, and 123 do not concern any federal law relevant to petitioner's continued custody for felony statutory burglary and must be dismissed.

## III.
### A.

A petitioner procedurally defaults a federal habeas claim when "a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule." Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006). A state court's finding of procedural default is entitled to a presumption of correctness, provided two foundational requirements are met. 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259-61 (1989). Second, the state procedural rule used to default petitioner's claim must be an independent and adequate state ground for denying relief. Ford v. Georgia, 498 U.S. 411, 423-24 (1991); Harris, 489 U.S. at 260.

The Supreme Court of Virginia declined to adjudicate claims 2-4, 6, 8-10, 13-14, 17, 18(a), 19- 22(a), 23-37, 39-44(a), 45(a), 102(a), and 104 pursuant to Slayton v. Parrigan, 215 Va. 27, 305 S.E.2d 680 (1974).[5] The Supreme Court of Virginia declined to adjudicate claims 105-122 and 125-127 as untimely, pursuant to Virginia Code § 8.01-654(A)(2).[6]

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that the procedural default rules of Slayton and Virginia Code § 8.01-654(A)(2) constitute adequate and independent state law grounds for decisions. See, e.g., Fisher v. Angelone, 163 F.3d 835,

---

[5] Slayton precludes a Virginia court from reviewing a non-jurisdictional claim in a petition for a writ of habeas corpus when that claim could have been presented at trial and on appeal but was not.

[6] Claims 105 through 122 are identical to the claims presented to the Supreme Court of Virginia in the second state habeas petition. Claim 125 merely rewords untimely claims 105-107, 111, 114, and 117-121, and claims 126 and 127 reword claims 105, 108-110, 115-116, and 120. Accordingly, I treat claims 125-127 as procedurally defaulted as untimely under Virginia Code § 8.01-654(A)(2), like the exhausted claims they are based on.

844 (4th Cir. 1998); O'Dell v. Netherland, 95 F.3d 1214, 1243 (4th Cir. 1996). Therefore, the Supreme Court of Virginia dismissed these claims pursuant to independent and adequate state procedural rules, and petitioner procedurally defaulted claims 2-4, 6, 8-10, 13-14, 17, 18(a), 19-22(a), 23-37, 39-44(a), 45(a), 102(a), 104-122, and 125-127.

## B.

A federal court may not review a procedurally defaulted claim absent a showing of a fundamental miscarriage of justice or cause and prejudice. See, e.g., Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1316 (2012). A court does not need to consider the issue of prejudice in the absence of cause. Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995).

A petitioner's unfamiliarity with law or a court's procedural rules does not provide a basis for establishing cause. See, e.g., Harris v. McAdory, 334 F.3d 665, 668-69 (7th Cir. 2003) (finding that a petitioner's pro se status does not constitute adequate ground for cause). Instead, cause constitutes a novel claim, a factor external to the defense that impeded compliance with the state procedural rule, or an error by counsel. Coleman v. Thompson, 501 U.S. 722, 753-54 (1991). Counsel's error may serve as cause if petitioner demonstrates (1) that the error was so egregious that it violated petitioner's constitutional right to effective assistance of counsel, and (2) that the ineffective assistance claim itself is exhausted and not procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). A procedural default will not bar a federal habeas court from considering a "substantial" ineffective assistance of counsel claim if a petitioner did not have counsel in the initial review proceeding or if counsel in that proceeding was ineffective.[7] See Martinez, 132 S. Ct. at 1316, 1318. (noting that a petitioner must show

---

[7] In Virginia, an ineffective assistance of counsel claim is not cognizable on direct appeal and must be raised via a

that the underlying ineffective assistance claim used to excuse a procedural default must be "substantial" by having "some merit").

Petitioner argues that his conviction constitutes a fundamental miscarriage of justice because his witnesses explained his alibi for when the crimes occurred. However, the jury determined the Commonwealth's evidence to be more credible than petitioner's witnesses: his mother; his fiancé, who is a felon; the fiancé's mother; and the fiancé's sister. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (stating federal habeas review does not redetermine the credibility of witnesses). Petitioner's mere disagreement with the jury's conclusion does not constitute cause.

Petitioner also concludes that the Supreme Court of Virginia's "radical interpretation" of the necessary specific intent for statutory burglary was so unforeseeable as to deprive due process. (Pet'r's Resp. 18.) However, petitioner does not identify the "interpretation" or explain how it was "radical." Accordingly, petitioner fails to establish cause or prejudice based on an unspecified "radical interpretation" of Virginia law. See United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (discussing changes in law that qualify as cause); Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995) (finding appellate counsel not ineffective for not foreseeing a change in law).

Petitioner also argues that prosecutorial misconduct occurred when the prosecutor interrupted Burks, Jr.'s testimony when Burks, Jr. was allegedly about to lie about cleaning the

---

state habeas petition. See, e.g., Roach v. Commonwealth, 251 Va. 324, 335 n.4, 468 S.E.2d 98, 105 n.4 (1996), overruled in irrelevant part by Morisette v. Warden of the Sussex I State Prison, 270 Va. 188, 202, 613 S.E.2d 551, 562 (2005); Hall v. Commonwealth, 30 Va. App. 74, 82, 515 S.E.2d 343, 347 (1999).

kitchen.[8] Petitioner acknowledges that the prosecutor may not have known of this "perjury," and the transcript does not reveal any prosecutorial misconduct during the examination. Petitioner's fallacious argument cannot constitute cause, and he fails to establish prejudice.

Petitioner further argues that the claims barred by Slayton should be excused because of his ineffective assistance of counsel claims. As discussed in part IV.A., none of petitioner's exhausted, non-defaulted ineffective assistance of counsel claims are substantial and, thus, cannot excuse a procedural default.

Petitioner additionally argues that claims 105-122, and 125-127 should not be barred by Virginia's statute of limitations because he timely filed them within one year of when the Circuit Court vacated the misdemeanor conviction. "Under federal habeas law, [federal courts] are not at liberty to question a state court's application of a state procedural rule because a state court's finding of procedural default is not reviewable if the finding is based upon an adequate and independent state ground." Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). Virginia's statute of limitations is an adequate and independent state ground, and thus, I cannot consider whether the Supreme Court of Virginia correctly applied Virginia law.

Consequently, petitioner fails to establish cause and prejudice or a fundamental miscarriage of justice. Claims 2-4, 6, 8-10, 13-14, 17, 18(a), 19- 22(a), 23-37, 39-44(a), 45(a), 102(a), 104-122, and 125-127 must be dismissed as procedurally defaulted.

---

[8] The exchange petitioner cites as prosecutorial misconduct is as follows:
Q: Tell the jury what was the condition of the trailer when you got there.
A: When I got there, it was [sic] animals in it. . . . The floors were stained from cat pee, dog pee, and stuff like that. . . . Kitchen was kind of messy. Refrigerator had mold in it. The meat in there –
Q: What did you do?
A: . . . [M]e and my wife, and my mother and my father, we took and cleaned out the trailer. We had it nice and spotless. . . .
(Tr. 32:9-22.)

## IV.

Claims 1, 5, 7, 11-12, 15-16, 18(b), 22(b), 44(b), 45(b), 46-84, 86-100, 102(b), and 103 present federal issues, are exhausted, and are not barred from federal review. After a state court addresses the merits of a claim also raised in a federal habeas petition, a federal court may not grant the petition unless the state court's adjudication of a claim is contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413.

A federal court may also issue the writ under the "unreasonable application" clause if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. This reasonableness standard is an objective one. Id. at 410. A Virginia court's findings cannot be deemed unreasonable merely because it does not cite established United States Supreme Court precedent on an issue if the result reached is not contrary to that established precedent. Mitchell v. Esparza, 540 U.S. 12, 16 (2003). Furthermore, "[a] state-court factual determination is not unreasonable merely because the federal habeas court

would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, 558 U.S. 290, ___, 130 S. Ct. 841, 849 (2010).

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). <u>See, e.g.</u>, <u>Lenz v. Washington</u>, 444 F.3d 295, 300-01 (4th Cir. 2006). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 563 U.S. ___, 131 S. Ct. 1388, 1398 (2011).

For the reasons described hereafter, the Supreme Court of Virginia's adjudication of claims 1, 5, 7, 11-12, 15-16, 18(b), 22(b), 44(b), 45(b), 46-84, 86-100, 102(b), and 103 was neither contrary to, or an unreasonable application of, clearly established federal law nor based on an unreasonable determination of the facts. Accordingly, petitioner is not entitled to habeas relief.

A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The Supreme Court of Virginia relied on <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), to dismiss petitioner's ineffective assistance of counsel claims. A petitioner claiming ineffective assistance of counsel must satisfy a two-pronged test. The first prong requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness.[9] <u>Strickland</u>, 466 U.S. at 687-88. The second

---

[9] "[A]n attorney's acts or omissions that are not unconstitutional individually cannot be added together to create a

20

prong requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."[10] Id. at 694. For the following reasons, claims 1, 5, 7, 15-16, 18(b), 22(b), 44(b), 45(b), 46-71, 74-84, 86-100, 102(b), and 103 did not describe deficient performance or sufficient prejudice, and the Supreme Court of Virginia's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.

1. Claims based on acts or omissions before trial.

In claims 48, 83, and 84, petitioner argues counsel was ineffective for not objecting to the Commonwealth's amendments to the warrant and indictment about when the offenses occurred. The indictment and warrant were properly amended, and counsel cannot be ineffective for not making a frivolous objection. Virginia law permits the trial court to amend the charging documents, but a defendant is entitled to a continuance if the amendment is a surprise. See, e.g., Rawls v. Commonwealth, 272 Va. 334, 344-45, 634 S.E.2d 697, 702 (2006). Petitioner did not allege that the amendments were a surprise, and in light of Virginia law, counsel could not assert a valid legal basis to object to the amendment.

In claims 62, 64, and 65, counsel was allegedly ineffective for not moving to quash the indictment because of double jeopardy; because it did not specify what felony petitioner intended

---

constitutional violation." Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998). Strickland established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential[,]" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id. "[E]ffective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978). The right to effective assistance of counsel exists only where the right to counsel exists in the first place. Wainwright v. Torna, 455 U.S. 586, 587-88 (1982).
[10] If a petitioner has not satisfied one prong of the Strickland test, a court does not need to inquire whether petitioner has satisfied the other prong. Id. at 697.

to commit when breaking and entering the trailer; and because it charged an intent to commit a felony while the only implied intent was to commit a misdemeanor. In claims 74 and 75, counsel was allegedly ineffective for not moving to dismiss the indictment as violating legislative intent and being fatally defective. In claim 81, counsel was allegedly ineffective for not moving to quash or dismiss the indictment as fatally defective because it did not allege petitioner had the intent to commit a felony.

The record, however, established that the indictment properly charged petitioner with statutory burglary and with the intent to commit a felony, and double jeopardy was not implicated because the elements of the felony and misdemeanor charges were different. The fact that petitioner failed to actually cause $1,000 worth of damages does not negate the intent he possessed to cause at least $1,000 worth of damages, and counsel could not be ineffective for making a frivolous motion.

In claim 63, counsel was allegedly ineffective for not requesting a bill of particulars to identify the intent to commit a felony. In claim 82, counsel was allegedly ineffective for not seeking discovery and a bill of particulars to learn more information about the damages. A bill of particulars is required only when an indictment is "insufficient to notify the accused of the nature and character of the charges so he can make his defense." Yeager v. Commonwealth, 16 Va. App. 761, 764-65, 433 S.E.2d 248, 250 (1993). In light of petitioner's preliminary hearing and prior trial in General District Court for the misdemeanor destruction of property charge, petitioner does not establish that a bill of particulars was necessary for him to understand the nature and character of the charges.

In claims 69 and 70, counsel was allegedly ineffective for not moving to merge the offenses. Petitioner did not describe a valid legal basis upon which counsel could have moved to merge the charges.

In claims 44(b) and 102(b), counsel was allegedly ineffective for not using preemptory strikes to challenge venire members who allegedly knew and conducted business with the Burkses and Wright and for not preserving the issue for appeal. Petitioner had not identified the venire members who counsel allegedly should have struck.

2. Claims based on acts or omissions during trial.

In claim 54, counsel was allegedly ineffective for not objecting to the prosecutor's opening remark about obtaining a DNA "hit" on petitioner. Petitioner believes that the jury concluded that petitioner was previously incarcerated by the fact his DNA was in a state databank. However, the prosecutor did not identify the DNA databank and clarified that a DNA "hit" could not be confirmed until petitioner's DNA was obtained via a buccal swab. The prosecutor's comment reflected evidence introduced at trial, and petitioner's speculation that the jury convicted him merely because of the prosecutor's statement, instead of the greater weight of evidence, does not constitute prejudice.

In claims 79 and 80, counsel were allegedly ineffective for not objecting when the Commonwealth submitted evidence proving a violation of § 18.2-121 and not raising the issue on appeal. The Supreme Court of Virginia properly rejected the claim because petitioner was not charged with or convicted of violating § 18.2-121.

In claims 22(b) and 91, petitioner argues counsel was ineffective for not objecting to hearsay testimony about the lease, the threatening phone messages, and the value of the damaged

property. Wright's and Burks, Jr.'s testimonies were not hearsay because they were parties to the same form lease petitioner signed, Wright signed the lease with petitioner, Wright listened to the threatening phone messages, and Wright could testify about the damages to his property. The threatening phone messages were not used to prove petitioner would kill Wright but that petitioner had left the messages on Wright's answering machine. Also, Wright conceded that the damages totaled less than $1,000. Therefore, petitioner did not establish either deficient performance or prejudice.

In claim 100, counsel was allegedly ineffective for not vigorously cross examining Wright because counsel's firm had previously been a real estate trustee for Wright's property. Petitioner further alleges that counsel had a potential conflict of interest as being a neighbor to the prosecutor. Although petitioner speculated that these facts constituted potential conflicts of interest, he did not allege any actual conflict of interest. See Mickens v. Taylor, 535 U.S. 162, 172 (2002) (recognizing the distinction between an actual conflict that affected counsel's performance and a potential, merely theoretical conflict). Furthermore, the record reveals counsel vigorously cross examined Wright and that counsel and the prosecutor lived in the same residential area but were not neighbors.

In claim 50, counsel was allegedly ineffective for not subpoenaing the preliminary hearing record to impeach Burks, Jr. about the crimes. Subpoenaing the hearing transcript was not necessary for impeachment, and Burks, Jr. admitted on cross examination that his memory was not sharp on many details.

In claims 92 and 93, counsel was allegedly ineffective for not fully questioning Captain Doss about petitioner's statements. Petitioner argues that counsel could have impeached Captain

Doss when Captain Doss said petitioner was very uncooperative and that counsel should have objected when Captain Doss "misrepresented" petitioner's statements. However, Captain Doss did not testify that petitioner was uncooperative, and counsel cross examined Captain Doss about petitioner's statements. Captain Doss testified that he did not ask petitioner whether he had bled inside the trailer before the locks were changed but rather tried to discern whether petitioner had been in the trailer after the locks had been changed. Captain Doss testified that petitioner told him that he did not go in the trailer because the locks had been changed and that he had no need to enter the trailer once he saw through the window that his property was missing.

In claims 18(b) and 45(b), petitioner alleges counsel was ineffective for not objecting to the Commonwealth relying on the transferred-intent doctrine.[11] The Commonwealth did not rely on the transferred-intent doctrine, and counsel had no basis to make this objection.

In claim 61, counsel was allegedly ineffective for not moving for a directed verdict for insufficient evidence that the same person who damaged the trailer also damaged the well house at the same time. The record, however, established the well was damaged between when Burks, Jr. left the property on Saturday and arrived on Sunday, and the evidence that petitioner damaged the trailer during the same time was sufficient to allow the jury to determine petitioner's guilt.

In claims 5 and 7, petitioner argues counsel rendered ineffective assistance by not arguing that the unlawful detainer judgment was void ab initio and by not moving to strike the evidence of petitioner's eviction. Petitioner failed to prove that the civil judgment for unlawful detainer was void. Furthermore, petitioner's argument at trial was that he did not commit the offenses,

---

[11] "The doctrine of transferred intent permits a fact finder to transpose a defendant's criminal intent to harm an intended victim to another unintended, but harmed, victim." Blow v. Commonwealth, 52 Va. App. 533, 541, 665 S.E.2d 254, 258 (Va. Ct. App. 2008).

and thus, whether petitioner was previously evicted was not relevant to that defense.[12]

In claim 47, petitioner argues counsel was ineffective for not presenting medical records showing petitioner injured his arm the day before the crimes. The trial record established that petitioner injured his arm on Saturday, June 24th; petitioner did not want to go to the hospital because he had been drinking alcohol; and petitioner's sister treated the injury. Burnett testified that petitioner accompanied her when she took her daughter to the hospital on Sunday for asthma. Petitioner did not proffer hospital records or the identity of a hospital employee that counsel should have presented during trial who could establish petitioner was treated while Burnett's daughter was treated for asthma.[13]

In claim 49, petitioner alleges counsel was ineffective for not presenting evidence that it was improbable that petitioner could throw a heavy wood stove into a well house. The jurors saw petitioner's size and stature and saw pictures of the wood stove, and they could make their own conclusions. Furthermore, counsel argued in summation that no physical evidence tied petitioner to the stove and well house and that a neighbor previously vandalized the wood stove.

In claim 53, counsel was allegedly ineffective for not presenting evidence how Wright and Burks, Jr. "broke into" the trailer and "stole" $12,000 worth of property petitioner left in the trailer after his eviction. However, Burnett testified about the "stolen" property, and petitioner did not explain how cumulative evidence would have impacted the trial. Furthermore, it was strategically reasonable to not dwell on the value of the "stolen" property to bolster petitioner's intent to retaliate and destroy property of equal worth.

---

[12] I may not consider petitioner's attachments in support of claims 5 and 7 that were not properly filed with the Supreme Court of Virginia. Pinholster, 131 S. Ct. at 1399.

[13] I may not consider petitioner's attachments in support of claim 47 that were not properly filed with the Supreme Court of Virginia. Id.

In claims 86 and 87, counsel was allegedly ineffective for not objecting to or presenting evidence about the value of the damages. The Supreme Court of Virginia properly held that the evidence of damages was sufficient under Virginia law to prove petitioner's intent to commit felony destruction of property and that no monetary value was necessary to prove a misdemeanor destruction of property charge. Furthermore, counsel thoroughly cross examined Wright about the amount of damages Wright claimed to have incurred.

In claims 88 and 89, counsel was allegedly ineffective for not challenging the DNA evidence recovered from the buccal swabs. The record establishes that the swabs were obtained via a warrant, the samples were not altered, and the lab received the samples in accordance with normal procedures. Petitioner did not proffer a valid legal basis upon which counsel could object, and none is apparent from the record.

In claim 90, counsel was allegedly ineffective for not bringing to the attention of the circuit court that Wright's testimony implied that Wright had seen the damages to the trailer and did not report it before Burks, Jr. The record reveals that this alleged discrepancy in testimonies was already before the trial court, and petitioner did not address how the alleged discrepancy about the timing of the police report negated evidence that petitioner committed statutory burglary.

In claim 46, petitioner argues counsel was ineffective for not subpoenaing Burks, Jr.'s parents and girlfriend to impeach Burks, Jr.'s testimony about when he and petitioner arrived at the trailer. Petitioner did not proffer what testimony the parents and girlfriend would provide that had a reasonable probability of producing a favorable verdict.

In claims 51 and 52, counsel was allegedly ineffective for not subpoenaing Deputy Wood and Deputy Wise. Petitioner did not proffer affidavits from the Deputies to verify their alleged prospective testimonies, and further, the proffered testimony as to these deputies would not create a reasonable probability of producing a favorable verdict.

In claim 55, counsel was allegedly ineffective for not subpoenaing an attorney at Lynchburg Legal Aid about communications the attorney had with Wright, Wood, and Burnett. Petitioner did not proffer an affidavit from the attorney about the attorney's purported testimony. Further, such testimony would be inadmissible hearsay.

In claim 57, counsel was allegedly ineffective for not subpoenaing prosecutors and documents from the Office of the Commonwealth's Attorney about Burnett's attempt to file charges against Wright and Burks, Jr. for "stealing" petitioner and Burnett's property. Petitioner believes the Commonwealth knew the unlawful detainer judgment was void and declined to prosecute Wright and Burks, Jr. to cover up the void judgment. Petitioner did not proffer evidence to support his claim that the unlawful detainer judgment was void or that the writ of possession was not properly executed, and he failed to describe a valid legal basis upon which counsel could subpoena witnesses and records from the Office of the Commonwealth's Attorney Office.

In claim 58, counsel was allegedly ineffective for not subpoenaing Mr. and Mrs. Burks, Sr. to question them about their initial belief that Burks, Jr. committed the offenses. Plaintiff did not proffer an affidavit from Mr. or Mrs. Burks, Sr. describing how they would testify that they implicated their son of breaking into and damage his own, newly-cleaned trailer instead of petitioner.

In claim 59, counsel was allegedly ineffective for not subpoenaing Ray and Dale Branham, who lived in the trailer before petitioner. Although petitioner provided the affidavit of Ray Branham in state habeas proceedings, the trailer's condition when petitioner moved into it was not critical to whether petitioner committed statutory burglary after the Burkses cleaned it.

In claim 94, counsel was allegedly ineffective for not arguing that the woman Burks, Jr. brought to the trailer was a girlfriend and not his wife, which caused the jury to be sympathetic to Burks, Jr. Petitioner failed to substantiate how the statement undermined the evidence that petitioner broke into the trailer and destroyed property after the Burkses cleaned it and changed the locks.

In claim 95, counsel was allegedly ineffective for not arguing that a white bucket did not have blood splattered on it although everything else around it did. Petitioner did not establish how a bucket that Burks, Jr. would have used to clean the trailer undermined evidence that petitioner's blood was found throughout the damaged trailer.

In claim 96, counsel was allegedly ineffective for not arguing laches "whenever applicable." However, the Supreme Court of Virginia already granted this claim as to the misdemeanor conviction, and laches was not applicable to the felony charge.

In claim 56, counsel was allegedly ineffective for not ensuring that the Circuit Court issued an alibi jury instruction. Petitioner did not proffer to the Supreme Court of Virginia the instruction he believes the Circuit Court should have issued.[14] Furthermore, the jury heard evidence about petitioner's alibi, and the Circuit Court properly instructed the jury about the Commonwealth's burden of persuasion for each element of the charges.

---

[14] Although petitioner filed a copy of an alibi jury instruction without referencing it in claim 56, I may not consider an exhibit that was not presented to the Supreme Court of Virginia. Id.

3. Claims based on acts or omissions after trial.

In claim 97, counsel was allegedly ineffective for not objecting during the sentencing hearing about the absence of the probation officer who prepared the presentence report. Petitioner did not allege what information the officer would have provided had she attended the sentencing hearing or how the information had a reasonable probability of a favorable outcome.

In claim 99, counsel was allegedly ineffective for filing a post-conviction motion for judgment notwithstanding the verdict without conferring with petitioner. A post-conviction motion challenging the verdict "is not an integral part of the system for finally adjudicating the guilt or innocence of a defendant," and thus, petitioner had no right to counsel on the motion. Evitts v. Lucey, 469 U.S. 387, 393 (1985). Furthermore, petitioner did not explain how the motion was frivolous or how consulting with petitioner would have changed the outcome of the trial.

In claim 60, counsel was allegedly ineffective for not moving for a mistrial or to set aside the verdict because the presentence report indicated that Burks, Jr. falsely testified and that the Commonwealth withheld exculpatory evidence. However, counsel thoroughly cross examined Burks, Jr., who admitted that he did not recall specific times because he never wears a watch, and petitioner did not establish that any inconsistency in the presentence report constituted exculpatory evidence.

In claims 15 and 16, petitioner alleges counsel were ineffective for not seeking post-verdict relief because of the "illegal" verdict. Petitioner did not establish that the jury's verdict was illegal, and counsel are not deficient for not arguing a frivolous motion. Furthermore, a motion to set aside the verdict "is not an integral part of the system for finally adjudicating the

guilt or innocence of a defendant," and thus, petitioner did not have a right to counsel to file that motion. Id.

In claims 76, 77, and 78, counsel was allegedly ineffective for not moving to invalidate the convictions because the Commonwealth proved a violation of Virginia Code § 18.2-121, "Entering property of another for purpose of damaging it, etc.,"[15] instead of § 18.2-137, destruction of property. Counsel had no basis to make such a motion because the indictment was valid, the indictment did not charge a violation § 18.2-121, and the evidence proved petitioner committed statutory burglary with the intent to commit felony property damage.

In claim 71, counsel was allegedly ineffective for not moving to dismiss the indictment or to vacate the judgment due to an alleged variance between the charges and proof. However, there was no variance between the charge and the proof, and counsel could not be ineffective for filing a frivolous motion.

In claims 66, 67, and 68, counsel was allegedly ineffective for not challenging the convictions as violating double jeopardy and Virginia Code § 19.2-294 and § 19.2-285. Double jeopardy was not implicated because the charges had different elements; § 19.2-294 did not apply since both convictions occurred in a single trial; and § 19.2-285 did not apply since petitioner was not retried after a partial acquittal.

---

[15] Virginia Code § 18.2-121 reads:
> It shall be unlawful for any person to enter the land, dwelling, outhouse or any other building of another for the purpose of damaging such property or any of the contents thereof or in any manner to interfere with the rights of the owner, user or the occupant thereof to use such property free from interference.

> Any person violating the provisions of this section shall be guilty of a Class 1 misdemeanor. However, if a person intentionally selects the property entered because of the race, religious conviction, color or national origin of the owner, user or occupant of the property, the person shall be guilty of a Class 6 felony, and the penalty upon conviction shall include a term of confinement of at least six months, 30 days of which shall be a mandatory minimum term of confinement.

In claim 98, counsel was allegedly ineffective for not appealing all issues that had been preserved for appeal. The selection of issues to address on appeal is left to the discretion of appellate counsel, who does not need to address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Petitioner fails to identify an omitted appellate issue that had a reasonable probability of setting aside the conviction or sentence for statutory burglary.

Petitioner broadly argues in claim 1 that any procedural default is a result of ineffective assistance of counsel and that counsel were ineffective to allow any stipulation about any issue that affected petitioner's rights. Petitioner did not more accurately describe what he thought constituted deficient performance and failed to establish prejudice. Furthermore, a stipulation is considered to be part of trial strategy and tactics and is worthy of deference. See Strickland, 466 U.S. at 689; Sexton v. French, 136 F.3d 874, 885 (4th Cir. 1999) ("Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.") (internal quotation marks omitted).

In claim 103, counsel was allegedly ineffective for all of the claims in the petition. For the reasons already stated, petitioner did not describe a viable ineffective assistance of counsel claim, and thus, petitioner cannot succeed with a claim that collective errors violated the Sixth Amendment.

B. SUFFICIENCY OF THE EVIDENCE CLAIMS

In claims 11 and 12, petitioner argues that he was unlawfully convicted because the misdemeanor property damage to Wright's property was the improper implied intent to commit a felony for breaking and entering Burks, Jr.'s dwelling. Petitioner presented this argument to the

Supreme Court of Virginia on direct appeal after the Court of Appeals rejected it on the merits. See Ylst, 501 U.S. at 803 (holding that a federal court can rely on a reasoned state court judgment resting primarily on federal law when later unexplained state court orders uphold that judgment). The Court of Appeals rejected the claim because the record established petitioner broke into the trailer with the intent to commit property damage worth $1,000 or more. Petitioner similarly argues in claim 124 that nothing established the necessary intent to support the statutory burglary conviction once the misdemeanor conviction was vacated.[16]

Any rational trier of fact could have found beyond a reasonable doubt that petitioner committed statutory burglary with the requisite intent.[17] To prove petitioner committed statutory burglary in violation of Virginia Code § 18.2-91, the Commonwealth needed to prove beyond a reasonable doubt that petitioner broke into a trailer used as a dwelling of human habitation with the intent to commit damage to property worth $1,000 or more. See Va. Code § 18.2-137 (describing felony property destruction).

Petitioner's blood was recovered inside the trashed trailer after the Burkses already lawfully occupied and cleaned it, and the damages were valued at $799. The fact petitioner did not cause $1,000 worth of damages does not negate the intent he possessed when he entered the dwelling. "[T]he specific intent with which an unlawful entry is made may be inferred from the surrounding facts and circumstances." Vincent v. Commonwealth, 276 Va. 648, 653, 668 S.E.2d 137, 140 (2008). Petitioner had been drinking alcohol, was angry about being evicted and

---

[16] The portion of claim 124 that duplicates untimely claims 105 through 107 is procedurally defaulted as described in part III.
[17] The due process clause of the Fourteenth Amendment protects a state court defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).

having personal property "stolen," intended to significantly damage the property from which he was evicted, and left threatening messages for Wright when he damaged Wright's property. Wright and Burks, Jr. explained that they saw trash and debris everywhere with damages to the doors, the walls, the well and well house, the refrigerator, and the carpet. Accordingly, petitioner fails to establish that the evidence was insufficient to sustain the statutory burglary conviction.

V.

For the foregoing reasons, I deny petitioner's motion to amend his response and motion for production of documents, grant respondent's motion to dismiss, dismiss the amended petition for a writ of habeas corpus, and deny petitioner's motions for reconsideration. Based upon my finding that petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTER**: This _19th_ day of March, 2013.

Senior United States District Judge